**FARREY'S, Inc. v. SUPPLEE–BIDDLE HARDWARE CO.**

No. 7823.

United States District Court
E. D. Pennsylvania.

March 19, 1952.

George V. Strong, Philadelphia, Pa., for plaintiff.

Frederic L. Clark, Robert N. Ferrer, Philadelphia, Pa., for defendant.

CLARY, District Judge.

The plaintiff herein is a Florida corporation engaged in the general hardware business, both wholesale and retail, at Miami, Florida. The defendant is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is engaged in the general wholesale hardware business in the City of Philadelphia.

During the month of August, 1943, defendant purchased from the United States Government some surplus reels of 12½ gauge, 4 point black barbed wire with barbs ½ inch to ¾ inch long with 3 inch spacing, in reels weighing 56 pounds. In advertising the availability of this wire to the trade, defendant, in addition to the specifications set forth above, added parenthetically "approximately 58 rods in length". By eight written orders between the dates of August 23, 1943 and October 14, 1943, plaintiff purchased from the defendant 11,-500 rolls of barbed wire. The first three orders totaling 1900 rolls specified 58 rods to a roll. The remaining five orders were carload lot orders ranging from 1500 to 1700 rolls each which contained no such length specification. The first two orders, 200 and 250 rolls respectively, were purchased as sample orders and, after inspection by the plaintiff, were offered to its customers as 56 pound rolls, 58 rods to a roll. The first three orders purchased by the plaintiff from the defendant were shipped directly from Philadelphia to the plaintiff's place of business and the last five orders were shipped by defendant directly to customers of the plaintiff. Plaintiff resold to its customers all except 2 rolls of the 11,500 rolls of wire purchased by it from the defendant. By either letter or telephone, the manner of communication being uncertain, plaintiff complained to the defendant that there were shortages in the length of the wire and that in some cases instead of 58 rods, the wire was only about 40 rods in length. This notice was acknowleged by the defendant on November 16, 1943.

The record in this case discloses that from time to time complaints were made by customers of the plaintiff of the shortage in the length of the wire on the rolls. One of its customers, Ralston Purina Company, sued the plaintiff in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, Common Law No. 11722, for damages resulting from the shortage. The case was tried to a jury and on January 29, 1947, the jury returned a verdict under two of Ralston's counts, the first resulting in a verdict against the instant plaintiff, Farrey's, Incorporated, in the amount of $1,271.64 with legal interest from November 15, 1943, and the second resulting in a verdict against the instant plaintiff in the amount of $918.88 with legal interest from October 19, 1943. The record clearly indicates that the basis of the verdict was shortage in the length of the wire on the rolls.

There was testimony that other adjustments were made by the instant plaintiff with its customers. Unfortunately for the plaintiff, considerations other than the length of the wire entered into the adjustments, particularly the application of O.P.A. ceiling prices, and plaintiff's witnesses were unable to state with any degree of certainty the amounts or portions of the adjustments directly attributable to shortages in the length of the wire.

The plaintiff instituted the present action seeking recovery of part of the purchase price for the shortage in the amount delivered. Its theory is that this was a sale of a certain number of rods of barbed wire at a certain price per rod, that less than the number of rods contracted for were delivered, and that it therefore is entitled to recover at the "contract rate" for the difference between the number of rods contracted for and the number of rods actually delivered. Plaintiff points to Section 44 of the Uniform Sales Act, 69 P.S. Pa. § 254, as authorizing such a measure of recovery. That section provides as follows: "Where the seller delivers to the buyer a quantity of goods less than he contracted to sell, the buyer may reject them,

but if the buyer accepts or retains the goods so delivered, knowing that the seller is not going to perform the contract in full, he must pay for them at the contract rate. If, however, the buyer has used or disposed of the goods delivered before he knows that the seller is not going to perform his contract in full, the buyer shall not be liable for more than the fair value to him of the goods so received."

■ In order to come within Section 44, plaintiff had to show that this was a sale on a rod-unit basis. Clearly, if this was a sale of a certain number of rods at a certain price per rod, plaintiff would only have to prove the amount of the shortage and he would be entitled to recovery in the measure set forth in Section 44. The plaintiff contends that the sale was on a rod-unit basis at the "contract rate" of $.0401 per rod. It arrives at that "contract rate" by a series of mathematical calculations involving the total contract price and the total length of the wire based on a represented length of 58 rods per roll. Nowhere else does that "contract rate" appear. The main difficulty with plaintiff's position that this was a sale of a certain number of rods of wire is that the negotiations between the parties clearly manifest an intention to deal on the basis of rolls of wire as the unit. There was no shortage in the number of rolls delivered and Section 44 is therefore inapplicable.

■■ The plaintiff has, however, proved a cause of action based on a breach of warranty. This was a sale by sample and by description and in such a sale not only must the bulk correspond with the sample, it must also correspond with the description. Section 14, Uniform Sales Act, 69 P.S.Pa. § 123. Here the rolls were described as 56 pounds in weight and approximately 58 rods in length. There was an express warranty as to weight and length in the seller's description of the goods. Under Section 12 of the Act, 69 P.S.Pa. § 121, any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods. There is no

doubt that the plaintiff did rely on the statement as to length and that the natural tendency of that statement was to induce the plaintiff to purchase the goods.

■ Plaintiff has proved to my satisfaction that the warranty as to length has been breached. Having proved that, however, plaintiff must look to Section 69 of the Act, 69 P.S.Pa. § 314, for its remedies. Sub-section 1(b) of that Section provides that the buyer may retain the goods and maintain an action for breach of warranty, and sub-section 6 provides that the measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty. The only burden which the plaintiff has carried with respect to proof of damages is the loss resulting from the action in the Florida Court, above referred to, in which it was compelled to pay $2,807.-19, debt, cost and interest. The payment was made on or about February 4, 1947, and the plaintiff is therefore entitled to recover $2,807.19 with interest from February 4, 1947.

The plaintiff has contended that even under Section 69, it need only prove the shortage in order to prove damage. It argues that the loss directly and naturally resulting to the purchaser in this case should be at least the amount of money it paid for goods it did not receive. That might be so were Farrey's an ultimate consumer who purchased the rolls of wire for a particular purpose in which it needed a specified length of wire. To the extent of the shortage it would have been damaged pro tanto since more wire would have been necessary to fulfill the requirements of the particular job. However, in the case of Farrey's, the evidence discloses that the wire was purchased for resale. The resales were made at a price per roll fixed before the shortage in the length of the rolls had been discovered. Since it received the same price from its customers for the "short" rolls that it would have received for 58 rod rolls, it cannot show any loss, nor has it proved any diminution in value to it by reason of the shortage. To the extent that it was compelled to make good to its customers, it has proved the loss I have set

forth. Conceivably there might be other elements of damage arising from a transaction of this sort, such as damage from loss of business and loss of customers as a result of the breach of warranty, all of which might be considered as part of its damage. The record is bare of any proof of such losses. As to adjustments that were made with its customers, as pointed out before, plaintiff has not sufficiently established that they were due to the shortages.

■ The defendant has urged that the plaintiff is not entitled to recover any amount because it failed to give notice of the breach within a reasonable time. Section 49 of the Act, 69 P.S.Pa. § 259, provides as follows: "In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty, within a reasonable time after the buyer knows or ought to know of such breach, the seller shall not be liable therefor."

The record indicates that within a short time after the last sale to plaintiff, the defendant was apprised of an apparent shortage in length. Defendant argues that the buyer should have inspected the goods upon receipt of them, either by measuring a roll of the wire or by cutting off a length of the wire, weighing it, and comparing that weight with the weight of the roll to determine whether the length was as represented. This argument ignores the realities of the situation. The evidence is clear that the barbed wire had been machine-rolled at the factory. The plaintiff was a dealer and bought these rolls for purposes of resale. Insofar as the plaintiff was concerned, these rolls of barbed wire might reasonably be regarded as in an original package. Once unrolled it would have been impossible without special equipment to re-roll the barbed wire in such a way as to permit its resale.

As to the contention that a piece of the wire should have been cut off and weighed,

that method of determination was equally available to the defendant before offering for sale approximately 75,000 rolls of barbed wire to the trade. Defendant cannot be heard now to complain that this was a reasonable method of inspection when the defendant itself did not use such a method. I conclude, therefore, that the plaintiff gave notice within a reasonable time after it had reason to know of the breach of warranty and that it is entitled to recover damages for the breach of warranty.

From the pleadings and proof, I make the following Findings of Fact and Conclusions of Law.

## Findings of Fact

1. Plaintiff is a corporation incorporated under the laws of the State of Florida, and defendant is a corporation incorporated under the laws of the State of Pennsylvania.

2. The amount in controversy, exclusive of interest and costs, exceeds $3,000.

3. Plaintiff is engaged in the general hardware business with a place of business at Miami, Florida, selling at wholesale and retail.

4. Prior to August 23, 1943, defendant made various written representations to plaintiff that it had in its possession for sale a number of carloads of barbed wire which it represented to be 12½ gauge, 4 point black wire with barbs ½ inch to ¾ inch long with 3 inch spacing, in coils weighing 56 pounds, (approximately 58 rods in length), and solicited plaintiff's order for barbed wire.

5. Plaintiff purchased from defendant by means of eight written purchase orders transmitted to defendant between August 23, 1943 and October 14, 1943, 11,500 rolls of the barbed wire offered for sale by the defendant.

6. Plaintiff did not see the barbed wire offered for sale by defendant or a sample of it prior to entering into the first purchase contract with defendant, but purchased in reliance upon the description furnished by defendant.

7. The first three purchase orders transmitted to plaintiff by defendant specified

the length of the wire in the rolls purchased as 58 rods per roll.

8. In accordance with the purchase orders forwarded by plaintiff, defendant shipped to plaintiff or to customers of plaintiff, in accordance with shipping instructions forwarded by plaintiff, 11,500 rolls of barbed wire from the stock of barbed wire which it described and represented to plaintiff and for which it solicited purchase orders from plaintiff.

9. The first three orders purchased by plaintiff were shipped by defendant directly to plaintiff. The last five orders were shipped by defendant directly to customers of plaintiff.

10. The barbed wire sold and delivered by defendant to plaintiff and to customers of plaintiff was supplied by defendant from the lot of barbed wire which it described and represented to plaintiff and was. of the same character and kind subject only to slight variations in the lengths of the individual rolls of wire delivered.

11. Plaintiff paid to defendant for the barbed wire sold and delivered by defendant the sum of $26,758.32.

12. Defendant resold to its customers all except 2 rolls of the 11,500 rolls of wire purchased by it from defendant.

13. Eleven rolls of the barbed wire were measured. These measured rolls came from various shipments made by defendant in accordance with plaintiff's orders. The average length of the measured rolls approximated 42 rods of barbed wire each.

14. Taking into consideration the length of the rolls of barbed wire actually measured, the weight per rod of representative samples of the wire delivered in other shipments, and the similarity of all rolls as to weight and type of wire, I find from all the evidence that the rolls were all approximately the same length and approximated 42 rods per roll.

15. The principal use of the barbed wire sold and delivered by defendant is in the erection of fencing, and the length of the barbed wire rolled on a reel is an important factor in the merchandising of a roll of barbed wire.

16. The barbed wire sold and delivered by defendant to plaintiff and customers of plaintiff was purchased by defendant from the United States Government by weight without any representation by the United States Government as to the length of the wire purchased or the length of the wire wound in any of the individual rolls.

17. Defendant did not measure any of the rolls of barbed wire in the lot which it purchased from the United States Government and for which it solicited orders from plaintiff.

18. Defendant made its representation as to the length of the wire in the rolls sold to plaintiff from an estimate by one of its representatives of the length of 56 pounds of barbed wire of a standard type without taking into consideration the fact that the wire which it offered for sale was a substandard type not comparable to the standard type which was the basis for the estimate made by defendant. Defendant made no tests to determine the accuracy of the estimate and made no measurements of any of the rolls to determine actual length.

19. The defendant was aware of the fact that the barbed wire was bought by the plaintiff for resale by it to its customers.

20. Shortages in the length of the wire were not readily discoverable by the plaintiff upon inspection. Unrolling and measuring the wire would have rendered it unmerchantable since the plaintiff did not have the special equipment necessary for rewinding the wire to make the compact unit necessary for sale.

21. In placing its orders for barbed wire plaintiff reasonably relied on defendant's representation as to the approximate length of wire in the rolls which constituted the packages in which the wire was sold.

22. Plaintiff did not learn of the shortage of the wire until ultimate consumers strung the wire for fencing purposes and made complaint to dealers to whom plaintiff had resold the wire and such dealers in turn complained to plaintiff.

23. Plaintiff has purchased from defendant the entire quantity of barbed wire

before it received notice of consumer's complaints that the wire in the rolls delivered to plaintiff by defendant and resold by plaintiff did not measure approximately 58 rods as represented.

24. Shortly after receiving notice of the claims by ultimate consumers that the wire in the rolls resold by plaintiff was not the approximate length represented by defendant, plaintiff gave notice to defendant of the claims of shortage.

25. By letter of November 16, 1943, defendant acknowledged plaintiff's claim of a shortage in the measurement of the rolls of wire and assured it that an adjustment would be made to its satisfaction.

26. As a result of shortage in the length of barbed wire on the rolls sold to it by the plaintiff, Ralston Purina Company, a customer of the plaintiff, brought action against the plaintiff in the Common Law Court of Florida, the Ninth Judicial Circuit of the Circuit Court of Orange County, No. 11722, and recovered a verdict against the plaintiff based on the aforesaid wire shortage in the amount of $2,807.19 which amount was paid by the plaintiff on February 4, 1947.

27. The evidence disclosed that plaintiff made adjustments with other of its customers who had purchased some of the rolls of barbed wire which plaintiff had obtained from the defendant. One of the factors entering into the adjustments was the shortage in the length of the barbed wire on the rolls purchased from plaintiff. There were, however, present in those adjustments other considerations including O.P.A. ceiling price adjustments and plaintiff has not established to what degree and in what amounts said adjustments were attributable to shortages in the length of wire.

28. The loss proved by the plaintiff which directly and naturally resulted from the shortage in length of wire is $2,807.19 with interest from February 4, 1947.

### Conclusions of Law

1. The Court has jurisdiction of the parties and of the subject matter of this action.

2. The law of Pennsylvania governs the action.

3. Defendant breached its warranty to the plaintiff in the sale of the merchandise involved in this action.

4. Plaintiff gave reasonable notice to defendant of the breach of warranty, after it knew or should have known of the breach.

5. The measure of damages for said breach of warranty is the loss directly and naturally resulting to plaintiff in the ordinary course of events from the breach.

6. The loss established by the plaintiff is $2,807.19 paid by it on February 4, 1947.

7. Plaintiff is entitled to judgment in the amount of $3,670.40 including interest.